**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEPI SHAFLER,

        Plaintiff(s),

        v.

HSBC BANK USA, et al.,

        Defendant(s).

_____/

**RELATED CASES**

No. C 06-5908 PJH
No. C 06-6887 PJH

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS AND TO
DECLARE PLAINTIFF A VEXATIOUS
LITIGANT; DENYING PLAINTIFF'S
MOTIONS FOR RECUSAL AND
FOR SANCTIONS**

Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1406, and to declare plaintiff a vexatious litigant came on for hearing before this court on January 17, 2007. Plaintiff appeared pro se, defendants HSBC and Scott Miller appeared through their counsel Michael Powers and James French and defendants Manufacturers and Traders Trust Company Bank and Cheryl Storie appeared through their counsel James Murphy. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion to dismiss because plaintiff's claims are barred by the doctrine of res judicata, the statute of limitations and the court lacks personal jurisdiction over defendants Storie and Miller. The court GRANTS defendants' motion to declare plaintiff a vexatious litigant in actions against these Defendants.

United States District Court
For the Northern District of California

**BACKGROUND**

Plaintiff filed case number 06-5908 on September 25, 2006 and case number 06-6887 on November 3, 2006.  The September action named HSBC Bank, Scott Miller, Manufacturers and Traders Trust Company Bank and Cheryl Storie as defendants.  The November action named HSBC and Manufacturers and Traders Trust Company Bank.  The cases were related by order of this court on December 11, 2006.  The two cases set forth the same basic allegations and therefore are discussed jointly.

Plaintiff's complaints allege that defendants, two banks and their respective legal counsel, conspired with each other and her former husband to steal from plaintiff.[1]  Plaintiff states that on November 7, 1985, her then husband, Donald Summer, withdrew $95,200 from a Merrill Lynch account that he jointly owned with plaintiff.  Merrill Lynch provided plaintiff's husband with two checks totaling this amount.  The checks listed Donald Summer and Pepi Summer as the payees and were drawn on an account that Merrill Lynch maintained with Manufacturers and Traders Trust Company Bank (hereinafter M&T).  Mr. Summer allegedly endorsed the checks and deposited them into a separate, individual account that he held with Marine Midland Bank, which is now HSBC.

In June of 1987, plaintiff filed an action in New York state court (hereinafter the New York action) against Marine Midland Bank (HSBC), M&T, and Merrill Lynch alleging that these three entities unlawfully converted plaintiff's money because they honored the two checks issued by Merrill Lynch, even though they had not been endorsed by plaintiff. Plaintiff's case against these defendants was litigated until November 10, 2005 when the New York Supreme Court, Appellate Division granted summary judgment in favor of HSBC stating that plaintiff had already been compensated for her one-half of the $95,200.  See

---

[1]Plaintiff's two filings set forth a litany of causes of action against the defendants.  The September filing contains a wide range of allegations including money laundering, bank fraud, mail fraud, lying as a sport, and intentional and negligent infliction of emotional distress.  The November filing includes allegations of embezzlement, forgery and money laundering and demands restitution pursuant to the Uniform Commercial Code.  All of the allegations arise out of the same November 7, 1985 incident involving her husband.

2

United States District Court

For the Northern District of California

1  Schafler v. HSBC Bank USA, 23 A.D. 3d 1083.  The New York Court of Appeals, denied

2  plaintiff's motion for leave to appeal on February 14, 2006.  See Schafler v. HSBC Bank

3  USA, 6 N.Y. 3d 796 (2006).  The United States Supreme Court denied plaintiff's petition for

4  a writ of certiorari on October 2, 2006.  See Schafler v. HSBC USA et. al., 127 S. Ct. 78

5  (2006).  Defendant Storie is an attorney with a New York law firm that was retained to

6  defend M&T in the New York action.  Defendant Miller was in-house counsel at HSBC and

7  for several years served as HSBC's defense counsel in the New York action.

8  **DISCUSSION**

9       Defendants argue that the court should dismiss this case under the doctrine of res

10  judicata because plaintiff's action is an attempt to re-litigate the New York action.

11  Defendants also argue that to the extent that plaintiff's complaint states a claim, the statute

12  of limitations has expired.  Defendants Storie and Miller argue that this court lacks

13  jurisdiction over them.  Defendants also request the court to enter a narrow vexatious

14  litigant order, barring plaintiff from suing these defendants without leave of court.  Plaintiff

15  responds that the New York proceedings were not legitimate proceedings because they

16  were based on defendants' lies.  Plaintiff states that the statute of limitations has not

17  expired because it runs from the date of the last act giving rise to the claim and in this case

18  defendants racketeering is ongoing.  Plaintiff states that the imposition of a vexatious

19  litigant order would violate her Constitutional rights.

20  **A.    DEFENDANTS' MOTION TO DISMISS**

21       For the reasons that follow, defendants' motion to dismiss is GRANTED.

22       Plaintiff's claims against HSBC and M&T are barred by the doctrine of res judicata.

23  Generally, the doctrine of res judicata precludes a party from re-litigating a claim that was

24  litigated or should have been litigated in a previous action.  See Ross v. Int'l Bhd. Of Elect.

25  Workers, 634 F. 2d 453, 457 (9th Cir. 1980).  Federal courts look to the state law of the

26  jurisdiction that rendered the judgment to determine whether a claim is barred by res

27  judicata.  See Thornton v. City of St. Helens, 425 F. 3d 1158, 1166 (9th Cir. 2005).  Under

28

United States District Court

For the Northern District of California

1    New York law the party moving for dismissal based on res judicata must demonstrate: (1) a

2    final judgment on the merits has been rendered, (2) involving the same parties, and (3)

3    involving the same transaction or series of transactions.  See O'Brien v. City of Syracuse,

4    54 N.Y. 2d 353, 357 (1981).  In this case, the first two requirements are easily satisfied.

5    The New York action was subject to a final judgment on the merits because the New York

6    appellate court granted summary judgment in favor of HSBC and the New York Court of

7    Appeals and the United States Supreme Court denied plaintiff's petitions for review.  See

8    Schafler v. HSBC Bank USA, 6 N.Y. 3d 796 (2006); Schafler v. HSBC USA et. al., 127 S.

9    Ct. 78 (2006).  The New York action, like the instant actions, named HSBC and M&T as

10   defendants.

11          The third element requires the court to determine whether the claims in the instant

12   actions were actually litigated or should have been litigated in the New York action.

13   Plaintiff's September 2006 complaint alleges that HSBC and M&T conspired with her

14   former husband to take her funds and alleges a cause of action for bad faith, conspiracy,

15   money laundering, theft and conversion, bank fraud by a fiduciary institution, tortious

16   interference with prospective advantage, suborning the deceit of the tribunal by others,

17   invasion of privacy and intentional and negligent infliction of emotional distress.  See

18   Complaint for Case No. C 06-5908 at 3-6.  Plaintiff's May 2006 complaint alleges that

19   HSBC and M&T unlawfully allowed her former husband to take her funds and engaged in

20   money laundering.  See Complaint for Case No. C 06-6887 at 2-6.  To the extent that

21   plaintiff asserts any valid claims, the claims arise out of the November 7, 1985 incident

22   involving her husband's withdrawal of funds from their joint account.  Claims arising out of

23   this event were subject to extensive litigation in the New York action where plaintiff alleged

24   Marine Midland Bank (HSBC) and M&T acted negligently and recklessly in allowing the

25   unlawful conversion of her funds.  See Powers Decl., Exhibit 6 at 2-4.  While plaintiff's

26   allegations in the instant actions include embezzlement, fraud and infliction of emotional

27   distress, which go beyond the New York action's unlawful conversion claim, these claims

28

4

United States District Court

For the Northern District of California

1   arise out of the same November 7, 1985 incident and could have and should have been

2   asserted in the New York action.  Plaintiff presents no evidence to support her contention

3   that the New York proceedings were not legitimate.  Accordingly, plaintiff's claims against

4   HSBC and M&T are barred by res judicata.

5          More than twenty years have elapsed since the November 7, 1985 incident and the

6   filing of the instant actions.  Giving plaintiff's pleadings the most liberal of constructions,

7   each claim that she asserts is barred by the statute of limitations.  In a diversity case such

8   as this, the court must apply the statute of limitations that the forum state would apply

9   under its choice of law rules.  See Flowers v. Carville, 310 F.3d 1118 (9th Cir. 2002).

10  California's choice of law rules require the court to apply New York's statute of limitations in

11  this case because the incident giving rise to this action occurred in New York and New York

12  has the greatest interest in having its law applied.  See e.g. Hurtado v. Superior Court, 11

13  Cal. 3d 574, 580 (1974) (noting that under California's 'governmental interest approach'

14  choice of law decisions require balancing the relevant interests of the states involved).

15  Plaintiff's potentially legitimate causes of action include theft and conversion, intentional

16  and negligent infliction of emotional distress, breach of contract, and invasion of privacy.

17  The statute of limitations for these actions is between one and six years.  For example, the

18  statute of limitations in New York for breach of contract is six years.  See N.Y. CPLR §

19  213(2).  The statute of limitations for unjust enrichment is six years.  See Elliott v. Qwest

20  Comm. Corp., 25 A.D.3d 897.  The statute of limitations for restitution is six years.  See

21  Abercrombie v. Andrew College, 438 F.Supp.2d 243, 262 (S.D.N.Y. 2006).  The statute of

22  limitations for invasion of privacy is one year.  See N.Y. CPLR § 215(3).  The statute of

23  limitations for intentional infliction of emotional distress is one year.  See Hansen v.

24  Petrone, 124 A.D. 2d 782.  The statute of limitations for negligent infliction of emotional

25  distress is three years.  See N.Y. CPLR § 214.  The statute of limitations for conversion is

26  three years.  See N.Y. CPLR § 214.  There is no evidence to support plaintiff's theory that

27  the statute of limitations should be tolled based on the fact that defendants' racketeering

28

United States District Court

For the Northern District of California

1   and corruption in this case has been ongoing.

2          Finally, even if plaintiff's claims against Storie and Miller were not barred by the

3   statute of limitations, plaintiff's claims against these two defendants would be dismissed

4   because the court lacks personal jurisdiction over them.  In determining whether the court

5   has personal jurisdiction over a defendant the court looks first to the forum state's long arm

6   statute and then determines whether the exercise of personal jurisdiction comports with the

7   Constitution's due process clause.  See Sher v. Johnson, 911 F. 2d 1357, 1361 (9th Cir.

8   1990).  California's long arm statute allows for the exercise of personal jurisdiction to the

9   maximum extent permitted under the Constitution's due process clause.  See Cal. Civ.

10  Proc. Code § 410.10 (1989).  Under the due process clause, a court may only exercise

11  personal jurisdiction over a defendant if he has had certain minimum contacts with the

12  forum state and should have therefore "reasonably anticipate[d] being haled into court

13  there."  See Volkswagen Corp Woodson, 444 U.S. 286, 297 (1980).  Generally, a court will

14  look at the nature and quality of a defendant's contacts to determine if the minimum

15  contacts requirement is met.  Sher, 911 F. 2d at 1358.  In this case, however, there is no

16  evidence that defendants Storie or Miller had any contacts with California that would allow

17  the court to exercise jurisdiction over their persons.  Storie and Miller are New York citizens

18  and live and work in New York.  Their actions in this matter, which were limited to

19  defending their respective clients M&T and HSBC in plaintiff's New York lawsuits, took

20  place in New York and have no connection to California.  Accordingly, the claims against

21  these two defendants are dismissed because the court lacks personal  jurisdiction.

22  **B.     DEFENDANTS' VEXATIOUS LITIGANT MOTION**

23         Defendants' motion for an order declaring plaintiff a vexatious litigant and enjoining

24  her from filing additional lawsuits against them without leave of court is GRANTED.

25         The All Writs Act, 28 U.S.C. § 1651, permits a district court to enjoin litigants who

26  abuse the judicial system from submitting future filings.  See Clinton v. United States, 297

27  F.2d 899 (9th Cir. 1961).  Prior to enjoining a vexatious litigant a court must: (1) provide the

28

6

United States District Court

For the Northern District of California

1  litigant notice and a chance to be heard before the court enters the order, (2) establish an

2  adequate record for review listing cases or abusive activities undertaken by the litigant, (3)

3  make a substantive finding that the claims brought were frivolous or were brought with the

4  intent to harass the parties and (4) narrowly tailor the order to deter the specific behavior

5  the litigant has engaged in.  See De Long v. Hennessey, 912 F.2d 1144, 1147-48 (9th. Cir.

6  1990).

7       The first factor is met because plaintiff had notice of the vexatious litigant motion

8  when defendants' served her with it on December 15, 2006.  Plaintiff responded to

9  defendants' motion in her opposition brief accusing defendants of sexism, stating that the

10 U.S. Supreme Court has repeatedly protected access to the courts and indicating that

11 opposing counsel should know this unless they are "illiterate or brain dead."  See Plaintiff's

12 Reply Motion, December 27, 2006 at 13.  Plaintiff was also given an opportunity to address

13 this issue at the January 17, 2007 hearing.

14      The second factor is met because plaintiff has a long history of filing frivolous actions

15 and making baseless and abusive allegations.  While there may have been some legitimate

16 factual basis for plaintiff's initial New York filing against HSBC and M&T, after apparently

17 dismissing several of her attorneys and electing to proceed pro se, plaintiff engaged in

18 abusive litigation tactics and used the judicial process to launch unsubstantiated personal

19 attacks against HSBC, M&T, their counsel, and various New York judges involved in the

20 case.  For example, in one of her declarations opposing defendants' remand motion,

21 plaintiff accused HSBC of engaging in "legal chicanery, deception and fraud on the Court."

22 She also attacked the New York state judges who had heard her case in state court.  She

23 accused the state trial judge of ruling in favor of HSBC because HSBC "assists with the

24 election process" and stated that "no State Supreme Court will rule against the banks

25 because they provide campaign contributions and other major benefits to them."  See

26 Powers Decl., Exhibit 15.  The court found these claims to be without merit.  In another

27 declaration she accused HSBC's attorney Scott Miller of perjury, knowingly presenting false

28

7

documents and affidavits to the court and engaging in fraudulent behavior.  <u>See</u> Powers

Decl., Exhibit 26.  She subsequently filed an amended complaint against Miller seeking

punitive damages, which the court dismissed.  <u>See</u> Powers Decl., Exhibits 27 and 29.

Before the appellate court handed down its ruling, plaintiff filed a motion attempting to

disqualify the entire appellate panel.  In her moving papers, she accused the trial judge,

Patrick NeMoyer, of bias and favoritism and stated that this "virus" of bias had spread to the

appellate panel.  <u>See</u> Powers Decl., Exhibit 35.

      In the instant cases plaintiff engages in similar tactics.  Plaintiff's pleadings include

unsupported allegations of criminal conduct against HSBC and M&T such as money

laundering and embezzlement.  <u>See</u> Complaint for Case No. 06-5098.  She accuses

defendant Miller of being the "slimiest most prolific liar on the planet that might be impaired

by his substance abuse (the old cocaine habit)."  <u>See</u> Plaintiff's Reply Motion, December

27, 2006 at 20.  In another part of that same brief she accuses defendants of using her

assets to pay for "illegal drugs and whoremongering."  <u>See</u>  Plaintiff's Reply Motion,

December 27, 2006 at 24.  In responding to defendants' motion to declare her a vexatious

litigant, plaintiff again accuses the New York courts of bias, stating that Miller should be

aware that the vexatious litigant request is not being made to another New York judge who

is in need of a loan or campaign contribution.  <u>See</u> Plaintiff's Response and Opposition to

Powers Decl. at 3.  She also accuses Miller of being a "repulsive cocaine snorting liar."

<u>See</u> Plaintiff's Response and Opposition to Powers Decl. at 7.

      Plaintiff's filing of frivolous claims and abusive litigation tactics extend beyond these

cases and the New York litigation from which they derive.  In October of 2004, United

States District Judge Breyer issued an order declaring plaintiff a vexatious litigant because

she had engaged in similar tactics in cases related to her bankruptcy proceedings.  <u>See</u>

Case No. C 04-2535 CRB.  Judge Breyer noted that plaintiff had filed eight different federal

actions all arising out of the same bankruptcy proceedings and had used the federal courts

to harass defendants.  The court found that while some of these eight actions were

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  legitimate appeals, many of the actions consisted of frivolous tort allegations against the

2  parties involved.  For example, after United States Bankruptcy Judge Newsome ruled

3  against plaintiff in her bankruptcy proceedings and found her in civil contempt for failing to

4  produce documents, plaintiff filed suit against Judge Newsome accusing him of bias and

5  corruption.  The Ninth Circuit Court of Appeals concluded that her allegations were

6  "conclusory" and based on "unreasonable inferences" and dismissed her complaint.  See

7  Schafler v. Newsome, 136 Fed. Appx. 104 (9th Cir. 2005).

8       Plaintiff also filed actions against the bankruptcy trustee, Scott Field, asserting

9  various claims related to the performance of his duties as bankruptcy trustee in plaintiff's

10  bankruptcy proceedings.  The District Court of Maryland dismissed plaintiff's suit because

11  she failed to obtain leave from the District of Maryland Bankruptcy Court before suing Field.

12  See Schafler v. Fields, No.Civ.A.AW-01-984, 2001 WL 34553964 (D. Md. Aug. 15, 2001).

13  After losing her appeal on February 5, 2002, plaintiff re-filed the same action on April 15,

14  2002, again without obtaining leave from the District of Maryland Bankruptcy Court.  The

15  District Court of Maryland again dismissed her action and the Fourth Circuit affirmed.  See

16  Schafler v. Field, No.Civ.A.AW-02-1308, 2002 WL 32818725 (D. Md. July 25, 2002);

17  Schafler v. Field, 50 Fed. Appx. 625 (4th Cir. 2002).  Plaintiff also appealed Judge Breyer's

18  vexatious litigant order and accused Judge Breyer of bias.  The Ninth Circuit affirmed the

19  vexatious litigant order and found that there was no evidence to support the allegation that

20  Judge Breyer was biased.  See Schafler v. Spear, 135 Fed. Appx 939 (9th Cir. 2005).  At

21  the hearing on these motions, in response to argument made by defendants about Judge

22  Breyer's prior order, plaintiff referred to Judge Breyer as a "case fixer."

23       In another case, which was commenced in Florida, plaintiff accused her

24  condominium association of wrongfully spending association dues, harassing her and

25  engaged in a "trashing orgy" intended to defame her.  See Schafler v. Indian Spring

26  Maintenance Ass'n, 139 Fed. Appx. 147 (11th Cir. 2005).  The court noted that defendant

27  had filed actions arising from the same factual situation on a yearly basis and dismissed the

28

9

United States District Court

For the Northern District of California

1  action because it was barred by res judicata. Id. at 149.  The court also cautioned plaintiff

2  that her behavior boarded on vexatious.  Id.  In that case too, Schafler responded by

3  attacking the district court and accusing it of bias.  Id.  The Eleventh Circuit Court of

4  Appeals affirmed the trial court's ruling and noted that there was no evidence to support

5  plaintiff's allegation that the district court was biased.  Id. at 151.

6       The third factor is met because these cases are simply an attempt to re-litigate the

7  New York action and appears to have been brought with the intent to harass the

8  defendants in this case.  As has been described above, plaintiff has a long history of filing

9  actions and then re-filing the action after the case is decided against her.  In these cases,

10  plaintiff continues this pattern of behavior.  Plaintiff litigated against these same defendants

11  on the same issue, her husband's unilateral withdrawal of money from a joint account, for

12  over eighteen years in New York.  Less than a year after the New York appellate court

13  dismissed her action, plaintiff filed the instant actions in this court again accusing

14  defendants of unlawfully taking her money.  Her pleadings in the instant cases are also

15  similar to her New York pleadings in that they too contain unsupported allegations and

16  personal attacks on defendants' and their counsel.  As Judge Breyer noted in his order,

17  while plaintiff has a constitutional right for her claims to be heard, she does not have the

18  right to file the same claims over and over again.  Plaintiff also does not have the right to

19  use the judicial process as a forum to make unfounded personal attacks on the opposing

20  parties, their counsel and the judges involved in the case.

21       Based on plaintiff's long history of frivolous filings and her use of the judicial process

22  to harass opposing parties, it is likely that plaintiff will continue to file frivolous actions

23  against these defendants unless she is enjoined.  Accordingly, plaintiff is enjoined from

24  filing any action in the United States District Court for the Northern District of California

25  against HSBC, Manufacturers and Traders Trust Company Bank (M&T), Scott D. Miller,

26  and Cheryl Storie or any of their employees, agents, attorneys, affiliates, subsidiaries,

27  parents, successors, or predecessors that arise out of or is in any way related to the

28

United States District Court

For the Northern District of California

1   alleged unlawful conversion of her funds in November 1985, unless and until such an action

2   is first approved by this court.

3        To obtain court approval to file an action against any of the individuals identified

4   above, plaintiff must first file an application which shall include the proposed complaint, the

5   evidence that supports the allegations in the complaint or in the absence of such evidence,

6   a declaration setting forth a good faith basis for concluding that she can obtain the

7   evidence necessary to support her allegations.  The application will be assigned to Judge

8   Hamilton unless the Chief Judge of the Northern District assigns another judge for this

9   purpose.  A copy of the application shall be sent by overnight mail to the defendants whom

10  plaintiff intends to include in her complaint.  The defendants will be given 15 days from the

11  date of service to respond to the application.

12       In deciding whether to allow plaintiff to proceed with any new action, the court will

13  consider whether the new action raises any issues that could have been raised in any of

14  the previous actions.  The court may, in its discretion, require that plaintiff post a bond in

15  the amount of the fees and costs that the defendants will likely incur in defending against

16  the action.  If the defendants prevail in the action, they will be entitled to be compensated

17  out of this bond for the fees and costs incurred in defending against plaintiff's action,

18  notwithstanding any other provisions of the state or federal law limiting the right to recover

19  attorneys' fees and costs.

20  **C.    PLAINTIFF'S MOTION FOR RECUSAL**

21       Plaintiff's motion for recusal is DENIED.

22       On February 1, 2007, approximately two weeks after the hearing on the these

23  motions, plaintiff filed a motion to recuse this court.  Plaintiff seeks the court's recusal

24  pursuant to 28 United States Code § 144 which provides for recusal where a party files a

25  timely and sufficient affidavit that the judge before whom the matter is pending has a

26  personal bias or prejudice against that party.  Recusal is appropriate only if "a reasonable

27  person with knowledge of all the facts would conclude that the judge's impartiality might

28

11

United States District Court

For the Northern District of California

1  reasonably be questioned." <u>Yagman v. republic Ins.</u>, 987 F.2d 622, 626(9th Cir. 1993)

2  (quotation omitted).  Because a federal judge is presumed to be impartial, the party

3  claiming bias bears a substantial burden to show that the judge is not impartial.  <u>Reiffin v.</u>

4  <u>Microsoft Corp.</u>, 158 F. Supp.2d 1016, 1021-22 (N.D. Cal. 2001).

5          Plaintiff's motion is based entirely on this court's treatment of her at the hearing on

6  defendants' motion to dismiss.  Despite plaintiff's characterization of this court's conduct as

7  rude and lacking in decorum and as an unprovoked verbal assault, the court is fairly certain

8  that the transcript will reflect a great deal of patience on the court's part.  A time limit was

9  imposed on plaintiff's presentation only after plaintiff refused to address the arguments

10 raised in defendants' motions even with the urging of the court, after the court tried to

11 impress upon her how busy the court is and how time for law and motion is not unlimited,

12 and after the court attempted to make is clear that the federal trial courts do not provide an

13 appellate avenue for her dissatisfaction with the state courts.  The court finds the

14 allegations of bias unsupported and the affidavit insufficient.  Accordingly the motion is

15 DENIED.

16 **D.     PLAINTIFF'S MOTION FOR SANCTIONS**

17         Plaintiff's motion for sanctions is DENIED.

18         After the motion to dismiss was filed, plaintiff filed a motion to sanction Michael

19 Powers, counsel for defendants HSBC and Scott Miller and noticed it for hearing on the

20 same day as the motion to dismiss.  Her request to shorten time for the hearing was denied

21 because it was procedurally defective and to afford Mr. Powers the time permitted by the

22 Local Rules to oppose the motion.   Mr. Powers has now opposed the motion with a

23 declaration filed on February 8, 2007, and plaintiff filed a reply and declaration on February

24 12, 2007.

25         Plaintiff's "Motion to sanction pro hac vice counsel Michael Powers for having

26 misusing confidential documents without authorization.  For unlawful and improper

27 purposes, and order him to review all the divorce trial transcripts," is largely nonsensical,

28

United States District Court

For the Northern District of California

1   but appears to raise a complaint that Mr. Powers used documents in support of HSBC's

2   motion to dismiss that were confidential.  Plaintiff no where identifies the documents

3   allegedly improperly used, but it appears that they might be included in the documents

4   attached to Mr. Powers' declaration and might be copies of documents from the underlying

5   civil action or the divorce proceeding which were pending for almost two decades in the

6   New York state court system.  Because plaintiff does not identify them, it is impossible to

7   determine if the documents are in fact "confidential" or if they are publicly filed documents

8   and it is equally impossible to determine if Mr. Powers "used" them in some improper way.

9   The exhibits that plaintiff provides in support of her request are unexplained

10  unauthenticated excerpts from various different court records and letters.  Without an

11  explanation of what the documents purport to be, they have no persuasive value and

12  without authentication, they are inadmissible.

13       Moreover, Mr. Powers states in his declaration that some of the documents that he

14  relies on for the motion to dismiss were indeed obtained from the New York courts.

15  Specifically, he sought permission to review, photocopy and use a portion of the record on

16  appeal and was granted permission to do so by the court over plaintiff's objection.

17  Plaintiff's declaration acknowledges that permission was granted.  She says that it was not

18  a "life time grant," but provides no specific facts or evidence that would tend to establish

19  that some unidentified documents were misused by Mr. Powers.

20       The requested relief is similarly unclear.  At one point plaintiff suggests the relief

21  sought as follows:  "Relief requested: Mr Powers needs to go away," in other places in her

22  papers she requests:  1) an order requiring Mr. Powers to make himself available for

23  "reverse discover," 2) an order requiring Mr. Powers to review in plaintiff's presence 1600

24  pages of documents from the prior litigation to see if there is evidence that the issues of

25  embezzlement and theft have been adjudicated, and 3) for an order withdrawing Mr.

26  Power's pro hac vice status.  Notwithstanding her ad hominem attack on Mr. Powers'

27  integrity and her accusations that his misconduct represents "sexual bias and harassment,"

28

13

1  plaintiff has failed to establish the existence of any sanctionable conduct.

2       Given the incomprehensible papers that were filed and plaintiff's refusal to address

3  the issues that were raised by the defendants' motions, even at the court's urging, the court

4  determines that a hearing would not be helpful on this particular motion and accordingly

5  VACATES the March 7, 2007 hearing date.  The motion is DENIED.

6                                    **CONCLUSION**

7       For the foregoing reasons, defendants' motions to dismiss the complaint with

8  prejudice and to declare plaintiff a vexatious litigant are GRANTED.  Plaintiff's motions to

9  recuse the court and for sanctions are DENIED.  The clerk shall close the file.

10      **IT IS SO ORDERED**

11  Dated:        February 21, 2007

12                                           _____

13                                           Phyllis J. Hamilton
                                             United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

14